UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20028-Cr-GRAHAM

UNITED STATES OF AMERICA

v.

ELISA RIVERA

               Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and files this Sentencing Memorandum, stating as follows:

**Factual Background and Procedural History**

On or about July 3, 2020, a family member of the defendant, with the defendant's knowledge and agreement, submitted on behalf of the defendant an online application containing materially false information to the Small Business Administration ("SBA") seeking an Economic Injury Disaster Loan ("EIDL") claiming that a small business the defendant owned and operated had been significantly impacted by the COVID-19 pandemic. Based on that false and fraudulent application, which claimed that the defendant's business had 12 employees and over $325,000 in gross revenues in 2019, the SBA sent the defendant a $10,000 advance that did not need to be repaid and a $61,300 low interest loan (DE: 9 at 3-4; DE: 18 at ¶¶ 20, 21). In actuality, the defendant did not own or operate any type of small business. Instead, at all relevant times, including 2019 and 2020, the defendant was a full-time civilian employee of the Miami-

1

Dade Police Department ("MDPD") who suffered no loss of salary due to the COVID-19 pandemic (DE: 9 at 1; DE: 18 at ¶¶ 21, 80).

In addition to obtaining money from the SBA for herself through a fraudulent application for COVID relief, the defendant offered to and did submit knowingly false and fraudulent EIDL applications to the SBA on behalf of nine other individuals, including family members and friends, none of whom owned or operated businesses or were otherwise qualified for these advances or loans. In exchange for submitting these fraudulent applications for the $10,000 advances that did not need to be repaid, the defendant charged applicants a fee of up to $1,000 (DE: 9 at 4-5; DE: 18 at ¶¶ 22 - 24).

When the fraudulent nature of her activities was discovered by law enforcement, the defendant was contacted and she voluntarily met with federal law enforcement agents and gave a statement, admitting her criminal activity in fraudulently obtaining her own EIDL advance and loan and knowingly submitting false and fraudulent EIDL applications on behalf of others. Shortly thereafter, the defendant retained counsel and expressed her desire to resolve the matter by accepting responsibility, waiving indictment, and pleading guilty to an Information. Following through on this stated intention, on February 24, 2022, the defendant pled guilty to a one-count Information (DE: 1) charging her with conspiracy to commit wire fraud, in violation of 18 U.S.C. §371 (DE: 7, 8).

**The Advisory Sentencing Guidelines Range**

Under the current post-*Booker* sentencing regime, this Court is required to first compute an advisory Guidelines range, before it applies the 18 U.S.C. §3553(a) factors to determine the defendant's ultimate sentence. *See United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). The government agrees with the defendant that the Presentence Investigation Report ("PSR") has correctly computed the Total Offense Level

to be level 13 (DE: 18 at ¶ 44), with the defendant being in Criminal History Category I (DE: 18 at ¶ 47), leading to an advisory Guidelines Zone C sentencing range of 12-18 months (DE: 18 at ¶ 95).   Accordingly, the government requests that the Court find the defendant's advisory Guidelines range to be 12-18 months imprisonment.

### The §3553(a) Factors and Defendant's Request for a Downward Variance

The defendant has now filed a Sentencing Memorandum asking this Court to vary downward and impose a non-prison sentence (DE: 19 at 1, 3).   For the reasons that will be explained below, the government opposes this request, and instead asks that this Court impose a sentence at the low end of the advisory Guidelines range: 12 months imprisonment, with 6 months to be served in imprisonment and the remaining 6 months to be served in home detention, as allowed by USSG §5C1.1(d)(2).

Once the Court has determined the advisory Guidelines sentencing range, the next step is to consider the §3553(a) factors in determining and imposing a reasonable sentence.  Although the Court may not simply presume that a sentence within the advisory Guidelines range is reasonable, the Supreme Court has reaffirmed the fact that "the Guidelines are to be the sentencing court's 'starting point and . . . initial benchmark'" and that sentencing courts "'*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process'"    *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1345 (2016) (citation omitted; emphasis in original).

Pursuant to §3553(a), the relevant factors to be considered in imposing a sentence are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes

3

by the defendant, and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the types of sentences available; (4, 5) the advisory Guidelines sentencing range and any relevant policy statements; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution.

## Section 3553(a)(1) – The Nature of Defendant's Offense

The first part of §3553(a)(1) focuses on the nature and circumstances of the offense committed. As set out in the Information (DE: 1), Stipulated Factual Basis (DE: 9), and PSR (DE: 19), the defendant defrauded the SBA out of COVID-19 relief funds intended to assist small business owners trying to deal with the financial hardships and business disruptions caused by the pandemic. Defrauding the government out of funds intended to help struggling small business owners is a serious offense, particularly since the defendant was a full-time MDPD employee whose income was not affected by the pandemic and who was not suffering from any pandemic-related financial hardship.

The seriousness of the defendant's criminal conduct is enhanced by the fact that she not only obtained her own fraudulent loan, but she also knowingly submitted fraudulent applications for other individuals who did not qualify, including her family members and friends. Moreover, she profited from the fees she collected for submitting these fraudulent applications. In addition, the fact that the defendant was a long-time employee of the MDPD, albeit a civilian employee and not a sworn officer, is another factor that adds to the seriousness of the offense since she was part of an organization whose mission is to help enforce the law to protect and serve the community.

**Section 3553(a)(1) – The Defendant's History and Characteristics**

The second part of §3553(a)(1) focuses on the history and characteristics of the defendant. As reflected in the very thorough PSR (DE: 18 at ¶¶ 45-69) and in the defendant's Sentencing Memorandum, (DE: 19 at 2), the defendant, despite difficult family and domestic situations, has been a productive law-abiding citizen who essentially raised two children on her own. In addition, the defendant was a productive employee of the MDPD who during her 25-year tenure worked her way up from office assistant to secretary and finally to administrative assistant in the Records Department, the position she held at the time of her criminal activity and her subsequent resignation in January 2022 (DE: 18 at ¶ 80).

While the defendant's long career with MDPD and her law-abiding life do not excuse her serious crime, they are meaningful factors to consider in setting the ultimate sentence. Similarly, it should be a factor in the defendant's favor that she voluntary met with the agents, admitted her wrongdoing, and then almost immediately retained counsel and expeditiously resolved this matter by pleading guilty to an Information.

**Section 3553(a)(2)**

Section 3553(a)(2) is geared to ensuring that the sentence imposed serves the various purposes stated in subparts (A) – (D). Here, the recommendation of 6 months imprisonment combined with another 6 months of home confinement, followed by a term of supervised release, for an otherwise law-abiding 50-year individual who immediately acknowledged her crime and quickly pled guilty sends a strong message that fraud of this type will not be tolerated, thereby deterring others from engaging in this conduct. Since

this criminal episode appears to be out of character for the defendant, the government also believes that this recommended punishment is sufficient to protect the public from the seemingly unlikely chance of future crimes by the defendant.

### Section 3553(a)(3), (a)(4), (a)(5)

These subsections of §3553(a) require consideration of the types of sentences available, the advisory Guidelines sentencing range, and any relevant policy statements in determining the final sentence. The PSR lays out the advisory Guidelines and sentencing options in clear and concise terms, noting that the defendant is in Zone C, allowing for the recommended "split" sentence of six months in imprisonment and six months in home detention or a community control setting, either of which would allow the defendant to obtain and maintain employment, allowing her to once again be a productive member of the community (DE: 18 at ¶ 95).

### Section 3553(a)(6), (a)(7)

These sub-sections focus on avoiding sentencing disparity and ensuring restitution is made. The defendant has agreed to forfeit the proceeds of her criminal activity through the entry of a forfeiture money judgment (DE: 9 at ¶ 8) and has acknowledged that restitution will be imposed as part of her sentence (DE: 9 at ¶¶ 9-11). As for sentencing disparity, the government is not aware of any cases involving similarly situated defendants and crimes that would indicate that the recommended sentence in this case would cause unwarranted sentencing disparity.

### Conclusion

After consideration of all the relevant advisory Guidelines and statutory factors

within all the facts and circumstances of the offense and offender in this case, it is the government's position that the Court should deny the defendant's variance request and should sentence the defendant at the low end of the advisory Guideline range of 12-18 months incarceration.   The government further respectfully suggests that the reasonable and necessary sentence to provide just punishment and protect the public would be a period of incarceration of 12 months, with six months served in imprisonment and six months served in home confinement or community control, as allowed for by USSG §5C1.1(d)(2).

**WHEREFORE**, the government respectfully requests, for the reasons set out herein and to be presented at the sentencing hearing, that this Court sentence the defendant to a term of incarceration of 12 months, with six months served in imprisonment and six months served in home detention, to be followed by a term of supervised release. The government also requests that the defendant be ordered to make full restitution and to pay the mandatory $100 special assessment.

>Respectfully submitted,
>
>JUAN ANTONIO GONZALEZ
>UNITED STATES ATTORNEY
>
>By:  s/*Edward N. Stamm*
>Edward N. Stamm (FL Bar #373826)
>Assistant United States Attorney
>U.S. Attorney's Office - SDFL
>99 Northeast Fourth Street, 8th Floor
>Miami, Florida 33132-2111
>Telephone: (305) 961-9164
>E-mail: edward.stamm@usdoj.gov